IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

JULIETTE MARIE McSHANE,

                                  Civil No. 03:08-cv-1443-MO

        Petitioner,

    v.

NANCY HOWTON,

                                OPINION AND ORDER

        Respondent.

        Kristina Hellman
        Assistant Federal Public Defender
        101 S.W. Main Street, Suite 1700
        Portland, Oregon 97204

                Attorney for Petitioner

        John R. Kroger
        Attorney General
        Andrew Hallman
        Assistant Attorney General
        Department of Justice
        1162 Court Street NE
        Salem, Oregon 97310

                Attorneys for Respondent

   1 - OPINION AND ORDER

MOSMAN, District Judge.

This 28 U.S.C. § 2254 habeas corpus case comes before the court for a decision on the merits of petitioner's Ground One claim of ineffective assistance of counsel. Because petitioner was not the victim of ineffective assistance of counsel, the Petition for Writ of Habeas Corpus (#3) is denied.

## <u>BACKGROUND</u>

On January 31, 2005, petitioner was indicted on charges of Assault in the Second Degree, Burglary in the Second Degree, two counts of Kidnapping in the Second Degree, Robbery in the First Degree, Theft in the First Degree, Unauthorized Use of a Vehicle, and Attempted Aggravated Murder. Respondent's Exhibit 102. The charges arose from an incident wherein petitioner and her co-defendant, Nina Deverell, approached the residence of the 82-year female old victim, Leta Bishop, with the intent to commit a burglary. Petitioner and Deverell forced Bishop into her home, sprayed her with pepper spray, placed her in a chair, and taped her hands and her mouth.

Bishop was able to remove the tape from her mouth and asked the intruders what they wanted. In response, one of the women hit Bishop in the head with a wrench. The assailants then pushed Bishop into a bathroom where they tied her up with tape and telephone cords and pushed her into the bathtub. Bishop was able to free herself from her restraints and peek out the bathroom door,

2 - OPINION AND ORDER

prompting petitioner and Deverell to spray her with a fire extinguisher. At that point, Bishop locked the door and did not leave until a friend showed up at her home. Respondent's Exhibit 117.

Petitioner entered a guilty plea to one count each of Assault in the Second Degree, Burglary in the First Degree, Kidnapping in the Second Degree, and Robbery in the First Degree. Respondent's Exhibit 103. In exchange, the State dropped the remaining charges, and the trial court imposed a stipulated sentence totaling 250 months in prison. Respondent's Exhibit 105.

Petitioner did not take a direct appeal, but she did file for post-conviction relief ("PCR") in Washington County where the PCR trial court denied relief on all of her claims. Respondent's Exhibits 122-123. The Oregon Court of Appeals summarily affirmed the PCR trial court's decision, and the Oregon Supreme Court denied review. Respondent's Exhibits 127, 129.

In Ground One of her Petition for Writ of Habeas Corpus, petitioner alleges that she suffered from the ineffective assistance of trial counsel when counsel failed to give her necessary information about her pending criminal charges and possible defenses. This, she claims, resulted in a guilty plea that was not knowing, intelligent, and voluntary. Respondent has now waived all procedural defenses she previously raised, and asks the court to deny relief on the Petition because the PCR trial

3 - OPINION AND ORDER

court's decision was neither contrary to, nor an unreasonable application of, clearly established federal law.

**DISCUSSION**

## I.  **Standard of Review**

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but

unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413.  The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410.  The state court's application of clearly established law must be objectively unreasonable.  *Id* at 409.

When a state court reaches a decision on the merits but provides no reasoning to support its conclusion, the federal habeas court must conduct an independent review of the record to determine whether the state court clearly erred in its application of Supreme Court law.  *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). In such an instance, although the court independently reviews the record, it still lends deference to the state court's ultimate decision.  *Harrington v. Richter*, 131 S.Ct. 770, 784-85 (2011); *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

## II.  <u>Analysis</u>

Because no Supreme Court precedent is directly on point that corresponds to the facts of this case, the court uses the general two-part test established by the Supreme Court to determine whether petitioner received ineffective assistance of counsel.  *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009).  First, petitioner must show that his counsel's performance fell below an objective standard of reasonableness.  *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984).  Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption

that the conduct falls within the "wide range of reasonable professional assistance." *Id* at 689.

Second, petitioner must show that his counsel's performance prejudiced the defense. The appropriate test for prejudice is whether the petitioner can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694. In proving prejudice, a petitioner who has pled guilty or no contest to an offense must demonstrate that there is a reasonable probability that, but for counsel's errors, he would not have entered such a plea and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). When *Strickland's* general standard is combined with the standard of review governing 28 U.S.C. § 2254 habeas corpus cases, the result is a "doubly deferential judicial review." *Mirzayance*, 129 S.Ct. at 1420.

At issue in this case are petitioner's contentions that her trial attorney failed to: (1) explain that the crime of Attempted Aggravated Murder required that she personally attempt to kill the victim; (2) advise her that several of the charges, including two of the charges dismissed pursuant to the plea agreement,[1] would have no practical impact upon her sentence; and (3) inform her that she had viable arguments to make against the Kidnapping charges.

---

[1] The non-Measure 11 charges the State dismissed were Theft in the First Degree and Unauthorized Use of a Motor Vehicle.

A.    **Personal Participation in Attempted Aggravated Murder**

According to petitioner, had she known that Attempted Aggravated Murder in Oregon requires the defendant to personally attempt to kill the victim, she would not have pled guilty. She also asserts that her appointed attorney consistently advised her that the State would be unable to prove intent, and thus would be unable to convict her of Attempted Aggravated Murder. She claims that counsel suddenly changed his advice on this issue after the prosecution made its last plea offer. She maintains that counsel advised her that if the State thought it could prove intent, then it likely could.

The PCR trial court issued a lengthy opinion in this case, and it specifically addressed these contentions. It concluded that counsel "was justified in advising petitioner that there was a reasonable possibility of conviction on this charge." Respondent's Exhibit 122, p. 3. The PCR trial court reasoned as follows:

> Apparently, the state's theory was that the fire extinguisher contents could have suffocated the victim. The contents extinguish a fire by depriving it of oxygen and could have done the same to the victim. However there is nothing in the record to indicate that either petitioner or her accomplice knew that. I infer that trial counsel took a position similar to the above up until sometime during the settlement conference.
>
> Nevertheless, that the conduct occurred created a risk that a jury would infer that petitioner and Ms. Deverell had the requisite intent. In addition, there is the

7 - OPINION AND ORDER

> inconvenient fact that Ms. Deverell brought
> mace to the incident. A jury could infer that
> Ms. Deverell brought mace because she expected
> to find the residence occupied and intended to
> subdue the occupant.
>
> Certainly, there was enough evidence to defeat
> a motion for judgment of acquittal on this
> charge. Given the nature of the incident (two
> methamphetamine addicts rob, beat and tie up
> an 82 year old woman), there was a substantial
> risk that a jury could find an intent to kill
> even if the defendant and her accomplice did
> not actually intend to kill the victim.
> (Contrary to petitioner's argument at 30 of
> her Trial Memorandum, even if such a verdict
> involved jurors acting contrary to their
> oaths, it is unclear how this fact finding
> could be contested on appeal.)
>
> With all these facts, [counsel] was justified
> in advising petitioner that she stood a chance
> of being convicted of attempted aggravated
> murder.

*Id.*

The PCR trial court also concluded that petitioner could have been convicted of Attempted Murder under Oregon law as an aider and abettor, a theory involving less culpability than the personal involvement required for an Attempted Aggravated Murder conviction. *Id.* Where a conviction for Attempted Aggravated Murder would carry a mandatory minimum sentence of 120 months, an Attempted Murder conviction, while lesser, would still carry a substantial 90-month mandatory minimum sentence.

There is almost no evidence on which a rational jury could rely to conclude that petitioner specifically intended to murder the victim in this case. Consequently, she did not run a high risk

8 - OPINION AND ORDER

of an Attempted Aggravated Murder conviction.  However, the PCR trial court's concerns cannot be discounted: where a pair of methamphetamine addicts use pepper spray, a wrench, and a fire extinguisher to assault an elderly woman, a jury could potentially infer an intent to kill, at least on the part of her co-defendant. It is also telling that where petitioner claimed to be surprised by the violence exhibited by her co-defendant, she never took the opportunity to leave or otherwise decline to assist her co-defendant in assaulting and restraining Bishop.  Where petitioner's presence at the crime scene and her participation in the crimes at issue were obvious, she faced a reasonable possibility that a jury could convict her of Attempted Murder on an aider and abettor theory.  The Plea Agreement obviated this concern.

In addition, as noted above, petitioner's Plea Agreement resulted in a stipulated 250-month sentence under which she is eligible for early release during the last 20 months of that sentence.  Respondent's Exhibit 102.  As the PCR trial court determined, even without the possibility of a conviction for either Attempted Aggravated Murder or Attempted Murder, petitioner faced a reasonably possible sentence of 300 months in prison. Respondent's Exhibit 122, p. 5.  In this scenario, the PCR trial court reasoned:

> Petitioner's minimum reasonably possible sentence was 230 months and the maximum reasonably possible sentence was 300 months. There was a significant but lesser chance that

9 - OPINION AND ORDER

she could be convicted of attempted aggravated
murder or attempted murder and receive 390 to
420 months.   There was also a small chance
that she could receive a sentence of less than
230 months.

Trial counsel reasonably assessed and advised
petitioner of the maximums, minimums and
probables.    Petitioner made a rational
decision based on this advice.  She accepted a
250 month sentence, the last 20 months of
which would be free of Ballot Measure 11
restrictions.   The plea bargain included no
conviction of or punishment for attempted
aggravated murder or attempted murder.

Based on the above, I conclude that
[counsel's] representation of [petitioner] was
adequate.    I must therefore deny post
conviction relief.

*Id.*

Petitioner faced a good deal of uncertainty as to her
potential sentence.  Her sentencing exposure was between 230 months
and 420 months.  While a conviction for Attempted Aggravated Murder
was a reach, she faced a serious risk of a conviction for Attempted
Murder.   In such a scenario, her likely sentence would have been
either 320 months (if the Kidnapping sentences were run
concurrently) or 390 months (if the court ran the Kidnapping
sentences consecutively).   It is difficult to conclude that
petitioner would have insisted on going to trial based upon all of
this information when her plea deal virtually mimicked her best
possible scenario.[2]  Accordingly, upon an independent review of the

_____

[2]   While petitioner believes she had multiple mitigating
factors in her favor, this is a highly speculative argument which
does not materially affect the analysis in this case.

record,[3] the PCR trial court's decision denying relief is neither contrary to, nor an unreasonable application of, clearly established federal law.

**B.    Non-Measure 11 Charges Dismissed**

Petitioner next argues that counsel should have advised her that the two non-Measure 11 sentences that the State agreed to dismiss as part of the plea bargain would have played no practical role in her prison sentence.  Specifically, because of the way Oregon sentencing works, the mandatory minimum sentences to which petitioner is subject operate to preclude the imposition consecutive sentences on the non-Measure 11 crimes.  *See State v. Davis*, 315 Or 484, 492, 847 P.2d 834, 839 (1993) (maximum sentence cannot exceed four times the presumptive sentence of the primary offense).  Petitioner asserts that counsel's failure to advise her about this fell below an objective standard of reasonableness.

If the dismissal of the non-Measure 11 charges had been the State's only concession, this would be a serious issue.  But petitioner received two significant benefits from the Plea Agreement: (1) there was no chance she would be convicted of either Attempted Aggravated Murder or Attempted Murder; and (2) one of the Kidnapping convictions was dismissed altogether, thus she ran no risk of serving consecutive sentences for the two Kidnapping

_____

[3] This court conducts an independent review of the record because the PCR trial court did not specifically address the prejudice prong of Strickland.

charges.   In light of these benefits, the fact that the dismissal
of two Measure 11 crimes was of no real value to petitioner was so
minor as to not reasonably warrant an explanation by counsel.
Accordingly, counsel's performance did not fall below an objective
standard of reasonableness as alleged by petitioner.

    C.   **Potential Arguments Regarding Kidnapping**

      Petitioner also alleges that counsel failed to inform her that
there were arguments to be made which would have foreclosed
convictions on the Kidnapping charges, or at least prevented the
court from imposing consecutive sentences on those charges.   The
PCR trial court specifically rejected these arguments:

> Regarding the kidnapping charges,
> petitioner cites *State v. Wolleat*, 338 Or 469
> (2005) for the proposition that a strong
> argument could have been made that petitioner
> was likely to avoid any kidnapping conviction.
> Further, petitioner cites *State v. Barnum*, 333
> Or. 297, 303 (2002) *abrogated on other
> grounds, State v. White*, 341 Or 624 (2006) for
> the proposition that there was insufficient
> pause between the two incidents to support
> more than one kidnapping conviction, in any
> event.   Petitioner argues that [counsel] was
> inadequate for failing to appreciate the
> effects of *Wolleat* and *Barnum* for not
> explaining the cases to petitioner.
>
> The arguments are flawed.  *Wolleat* does
> establish that incidental movement during the
> commission of another crime does not
> constitute kidnapping.   However, that case
> does not address the facts in this case.   In
> this case, petitioner and her accomplice . . .
> on two separate occasions, in two separate
> places (albeit in the same residence) took or
> restrained the victim to a particular spot and
> tied her up.   Trial counsel was justified in

concluding that the tying up constituted
sufficient evidence for a jury to conclude
that [petitioner] and her accomplice intended
to interfere substantially with their victim's
freedom. The *Wolleat* opinion notes that such
an intent would support a kidnapping
conviction. 338 Or at 478.

Additionally, trial counsel justifiably
feared that the evidence could support a
conclusion that there were two discrete acts
of kidnapping, (once tying the victim up
outside the bathroom and a second time, tying
her up inside the bathroom) which could result
in two convictions that could be sentenced
consecutively. A jury could have found that
it was only after the victim partially freed
herself from the first kidnapping (she removed
the gag from her mouth and asked the women
what they wanted) while the women were
ransacking the house, that the women executed
the second kidnapping, by locking and tying up
the victim in the bathroom.

The PCR trial court's determination that state law allowed for
separate Kidnapping convictions based upon the specific facts of
this case is a state court determination of state law. Such
determinations cannot be challenged in a federal habeas corpus
action.[4] *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[W]e
reemphasize that it is not the province of a federal habeas court
to reexamine state-court determinations on state-law questions.");
*Bains v. Cambra*, 204 F.3d 964, 972 (9th Cir.) ("a federal court is

---

[4]   To the extent petitioner views the PCR trial court's
findings as an analysis of a federal sufficiency of the evidence
claim, the court does not view it in this manner. A state court's
determination as to what constitutes an incidental movement or a
sufficient pause under state kidnapping law must be accepted as
true by a federal habeas court.

bound by the state court's interpretations of state law."), *cert. denied*, 531 U.S. 1037 (2000), citing *Wainwright v. Goode*, 464 U.S. 78, 84 (1983).  This court finds it dubious that petitioner would have rejected the State's plea offer and insisted on going to trial had counsel advised her that arguments of little merit could be made on her behalf.  As a result, the court concludes that counsel's performance did not fall below an objective standard of reasonableness.

Twenty-eight U.S.C. § 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.  It goes no farther." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011).  None of petitioner's arguments in support of her Ground One claim of ineffective assistance of counsel meet this standard.  Accordingly, upon an independent review of the record, the PCR trial court's decision denying relief in this case is neither contrary to, nor an unreasonable application of, clearly established federal law.

### CONCLUSION

For the reasons identified above, the Petition for Writ of Habeas Corpus (#3) is DENIED.  The court GRANTS a Certificate of Appealability only as to petitioner's claim in Ground One that counsel failed to explain that Attempted Aggravated Murder required that she have the specific intent to kill the victim.  With respect

to the remainder of petitioner's claims, the court declines to issue a Certificate of Appealability on the basis that petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this   20th   day of February, 2013.

/s/ Michael W. Mosman
        Michael W. Mosman
        United States District Judge